IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LANCE A.,[1]<br><br>                    Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>                  Defendant. | Case No. 6:21-cv-00723-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

      Lance A. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a

---

    [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

    [2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021, and is named as the defendant in place of "Acting Commissioner, Social Security Administration." *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///
///
///
///
///
///

PAGE 2 – OPINION AND ORDER

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in September 1973, making him forty-five years old on November 19, 2018, his amended alleged disability onset date.[3] (Tr. 222, 224.) Plaintiff earned a GED[4] and does not have past relevant work experience. (Tr. 23, 259.) In his application, Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), severe agoraphobia, social anxiety disorder, severe panic attacks, head injury, right femur rod, and spinal damage. (Tr. 264.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on August 14, 2019, Plaintiff requested a hearing before an ALJ. (Tr. 138, 156, 176.) Plaintiff and a vocational expert appeared by telephone and testified at an administrative hearing held on August 18, 2020. (Tr. 30-66.) On September 30, 2020, the ALJ issued a written decision denying Plaintiff's application. (Tr. 10-25.) On, March 11, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12

---

[3] Plaintiff originally alleged a disability onset date of May 1, 2008, but amended the onset date after an Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits on December 15, 2017. (Tr. 95, 98-113, 240.)

[4] A GED certifies that an individual has completed a national standardized high school equivalency exam. *See, e.g.*, *E.R.K. ex rel. R.K. v. Haw. Dep't of Educ.*, 728 F.3d 982, 985 (9th Cir. 2013) ("The GED program prepares students to take the GED test, a national standardized high school equivalency exam.").

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 10-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 19, 2018, his amended alleged disability onset date. (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "fractures of lower limb with open reduction internal fixation of right femur and residuals therefrom, spine disorders including heterotopic calcification, anxiety related disorders, major depressive disorder, [PTSD], and history of

PAGE 4 – OPINION AND ORDER

substance abuse[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 17.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work subject to these limitations: (1) Plaintiff is limited to occasional climbing, stooping, kneeling, crouching, and crawling; (2) Plaintiff is limited to occasional bilateral overhead reaching; (3) Plaintiff is limited to occasional interaction with co-workers and the general public and can occasionally respond appropriately to criticism or correction from a supervisor; and (4) Plaintiff needs a static work environment with few changes in work routines and settings. (Tr. 18.) At step four, the ALJ concluded that Plaintiff had no past relevant work experience. (Tr. 23.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a cleaner/housekeeper, small product assembler, folding machine operator, document preparer, and addresser. (Tr. 23-24.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by improperly rejecting lay witness testimony and medical opinion evidence. (Pl.'s Br. at 3.) Alternatively, Plaintiff argues that the ALJ should have further developed the record. (*Id.*) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and is supported by substantial evidence in the record. Therefore, the Court affirms the Commissioner's decision.

### I.    LAY WITNESS TESTIMONY

#### A.    Applicable Law

An ALJ "must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without

PAGE 5 – OPINION AND ORDER

providing reasons that are "germane to each witness." *Stout*, 454 F.3d at 1056 (citations omitted); *see also Kimberly T. v. Kijakazi*, No. 3:20-cv-1543-SI, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022) (holding that ALJs "must continue to give germane reasons for discounting lay witness testimony" and concluding that "under the new regulations [] an ALJ's failure to address lay testimony is error") (citation omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

"Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the [reliability] of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's [subjective] complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

**B.     Analysis**

Plaintiff argues that the ALJ erred by "not rejecting or crediting" the lay witness testimony provided by Plaintiff's partner, Jasmine K. (Pl.'s Br. at 3-8.) Specifically, Plaintiff argues that (1) the ALJ's reference to Jasmine K. as Plaintiff's daughter, rather than partner, demonstrates that "the ALJ [] did not even read the statement . . . which is harmful reversible error[;]" (2) the ALJ did "not articulate any analysis of this . . . testimony[;]" and (3) the ALJ did "not provide any germane reasons for rejecting [Jasmine K.'s] testimony." (*Id*. at 5.) The Commissioner responds that (1) the ALJ's "oversight" in "mistakenly" referring to Jasmine K. as Plaintiff's daughter "does not establish that the ALJ 'did not even read the statement' or that he otherwise harmfully erred . . . [because] Plaintiff fails to establish how the mistake in identifying

PAGE 6 – OPINION AND ORDER

a familial relationship prejudiced Plaintiff[;]" (2) the ALJ was not "required to articulate how [he] consider[ed] evidence from nonmedical sources[;]" (3) the ALJ's path to discrediting the testimony "may reasonably be discerned" as being based on "inconsistency between the medical evidence[,]" and (4) the ALJ's unchallenged discrediting of Plaintiff's testimony "appl[ies] equally to the similar lay statements" of Jasmine K. (Def.'s Br. at 4-5.)

First, the Court finds that the ALJ did not commit harmful error by misidentifying the relationship between Plaintiff and the lay witness. The ALJ made no mention of the lay witness's relationship to Plaintiff as a basis for discounting the lay witness testimony, and his reference to Jasmine K. as Plaintiff's daughter instead of partner appears to be nothing more than a scrivener's error. See *Beverly K. H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00158-AC, 2021 WL 5985126, at *10 (D. Or. Nov. 15, 2021) ("A harmless scrivener's error by the ALJ is not sufficient to establish reversible error." (citing *Patterson v. Saul*, 812 Fed. App'x. 506, 508 n.4 (9th Cir. 2020))), *findings and recommendation adopted*, 2021 WL 5985137 (D. Or. Dec. 15, 2021); *see also Miller v. Colvin*, No. C15-5068 TSZ, 2015 WL 6455097, at *3 (W.D. Wash. Oct. 26, 2015) ("A mere scrivener's error is not a basis to reverse the ALJ's decision . . . [s]o long as the ALJ's intent is clear, any typographical error will be disregarded."), *aff'd*, 686 F. App'x 478 (9th Cir. 2017); *Gavit v. Comm'r of Soc. Sec.*, No. 17-13066, 2018 WL 7051094, at *3 (E.D. Mich. Dec. 7, 2018) ("While the ALJ may have improperly identified Mr. Wood as 'Dr. Wood' in her analysis, there is no evidence that such a misidentification was anything by a harmless scrivener's error.").

Second, Plaintiff is incorrect that the ALJ did not provide a germane reason for discounting the lay witness testimony. Jasmine K. reported, *inter alia*, that "[Plaintiff h]as a very hard time being around people[,]" "[p]eople easily annoy him[,]" and "he gets annoyed and

angry easily with people[.]" (Tr. 267-73.) The ALJ "considered the supportive statements and observations" of Jasmine K. but found them "neither inherently valuable nor persuasive when compared to the objective medical evidence[.]" (Tr. 18.) Specifically, the ALJ found that Plaintiff's mental health symptoms are not consistent with greater than moderate limitations, in part because Plaintiff "has not received the level of mental health treatment that would support marked or extreme limitations such as inpatient admission for acute psychiatric care or outpatient partial hospitalization for stabilization of psychiatric symptoms." (*Id.*) "Inconsistency with medical evidence" is a germane reason to discount a lay witness's testimony. *Bayliss*, 427 F.3d at 1218.

Third, even if the ALJ erred in discounting Jasmine K.'s testimony, any error was harmless because Jasmine K.'s testimony is substantially similar to Plaintiff's own testimony (*compare* Tr. 267-74 *with* Tr. 289-96), and Plaintiff assigns no error to the ALJ's discounting of his own testimony. *See De Mello v. Kijakazi*, No. 22-35111, 2022 WL 17583054, at *1 (9th Cir. Dec. 12, 2022) ("[A]ny claimed error was harmless because, given the similarity between [the lay witness's] report and [the claimant's] testimony, the lay testimony did not alter the ultimate nondisability determination.") (simplified); *see also Jacob v. Berryhill*, 756 F. App'x 709, 712 (9th Cir. 2018) (finding that "any error was harmless" in discounting the lay witness testimony, which overlapped substantially with the claimant's, because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness); *Burkett v. Berryhill*, 732 F. App'x 547, 553 (9th Cir. 2018) (holding that the ALJ "did not err by declining to discuss" lay witness testimony, and that any error was harmless because the lay "testimony described the same limitations as [the claimant's properly discounted] testimony") (simplified).

///

PAGE 8 – OPINION AND ORDER

Plaintiff asserts that Jasmine K.'s testimony "goes beyond" his testimony (Pl.'s Br. at 3; Pl.'s Reply Br. at 1) but does not point to any testimony that is materially different than Plaintiff's own testimony. As summarized by Plaintiff, Jasmine K. reported that Plaintiff is easily annoyed by people, including authority figures and neighbors, does not sleep well, and does not shower often. (Pl.'s Reply Br. at 2, citing Tr. 267-73.) Similarly, Plaintiff testified that he panics around groups of people, it is "too much" for him to be around other people, he has a "serious fear" of public places, he does not leave his house unless he must, he has a "quick fuse," and he sleeps an average of 2-3 hours per night. (Tr. 42-47, 289-94.) The Court finds that Jasmine K.'s testimony is substantially similar to Plaintiff's own testimony, and therefore Jasmine K. has not identified any additional symptoms that the ALJ has not already appropriately discounted with respect to his evaluation of Plaintiff's testimony to which Plaintiff has not assigned error.

For these reasons, the Court finds that the ALJ did not err in evaluating Jasmine K.'s lay witness testimony.

## II.  MEDICAL OPINION EVIDENCE

### A.  Applicable Law

As the parties agree (*see* Pl.'s Br. at 6; Def.'s Br. at 3), the recently amended regulations apply here because Plaintiff filed his application for benefits after March 27, 2017. (Tr. 222, 224.) *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . d[id] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

PAGE 9 – OPINION AND ORDER

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[5] Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence[.]'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the

---

[5] The Court notes that *Woods* analyzed the new regulations for disability income benefits ("DIB"), while Plaintiff seeks SSI benefits. However, the new regulations for DIB and SSI benefits are "virtually identical" and therefore the analysis in *Woods* applies here. *See Wallis v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08132-PHX-JAT, 2022 WL 2527116, at *1 (D. Ariz. July 7, 2022) ("The Court notes that the relevant regulations for both DIB and SSI applications are virtually identical. Thus, the Court will only cite to DIB regulations found in 20 C.F.R. Part 404. For reference, parallel SSI regulations are listed in 20 C.F.R. Part 416."); *see also Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new regulations for DIB and SSI claims are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(b)(2), 1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)," *id.* § 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32 F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through (c)(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

**B.   Analysis**

Plaintiff argues that the ALJ "failed to identify legally sufficient bases supported by substantial evidence to reject [Warner's] opinion[.]" (Pl.'s Br. at 8.) As explained below, the Court finds that substantial evidence supports the ALJ's decision to discount Warner's opinion.

///

PAGE 11 – OPINION AND ORDER

Warner completed a treating source statement on August 13, 2020.[6] (*See* Tr. 410-15.) Warner rated Plaintiff's limitations in several categories related to Plaintiff's mental ability. (*See id.*) As relevant here, Warner found that Plaintiff suffers from a "moderate" limitation in his ability to "[u]nderstand and remember simple instruction[,]" "[c]arry out simple instructions[,]" in "[t]he ability to make judgments simple [sic] work-related decisions[,]" and to interact with the public, his supervisors, and coworkers. (Tr. 413-14.) Warner also found that Plaintiff suffers from a "marked" limitation in his ability to "[u]understand and remember complex instructions[,]" "[c]arry out complex instructions[,]" in "[t]he ability to make judgments on complex work-related decisions[,]" and to "[r]espond appropriately to usual work situation[s] and to changes in routine work settings." (Tr. 414.) Warner also initialed an option indicating that he believed Plaintiff would miss "[m]ore than 4 days per month" of work due to his "psychiatric problems[.]" (Tr. 415.)

Near the end of his opinion and after discussing at length Plaintiff's activities of daily living, symptom testimony, objective medical evidence, and treatment history—including Warner's treatment notes—the ALJ found Warner's opinion "persuasive only for the moderate limitations in social functioning, but . . . there is little evidence to support moderate limitations or a marked limitation in understanding, remembering or applying information or adapting or managing oneself, or work absences due to psychological symptoms." (Tr. 22.) The ALJ

---

[6] Plaintiff only challenges the ALJ's evaluation of Warner's August 13, 2020, treating source opinion. (*See* Pl.'s Br. at 8-9.) The Court notes that the ALJ also discounted an April 2019 statement from Warner to the Department of Human Services ("DHS") stating that Plaintiff's symptoms had "no improvement" and that Plaintiff could not "act appropriately with others outside the home." (Tr. 21.) The ALJ found the statement "unpersuasive [and] inconsistent with [Plaintiff's] treatment history and [] Warner's own clinic notes of [Plaintiff's] progress." (*Id.*) Plaintiff does not assign error to the ALJ's finding that Warner's report to DHS was unpersuasive and inconsistent with Plaintiff's treatment history and Warner's own notes. (Tr. 21.)

PAGE 12 – OPINION AND ORDER

explained that "[t]he State agency reviewing psychologists, both of whom are doctors in psychology [] and experts in reviewing disability claims for psychological impairments, determined no more than moderate impairments in functioning[,]" including moderate limitations in Plaintiff's ability to "[i]nteract with others" and "[a]dapt or manage oneself[,]" and mild limitations in Plaintiff's ability to "[u]nderstand remember, or apply information" and to "[c]oncentrate, persist, or maintain pace[.]" (Tr. 22, 132-33, 149.) Additionally, the ALJ found that the State agency psychologists' opinions of Plaintiff's limitations "are more consistent with the overall record." (Tr. 22.)

Plaintiff argues that the ALJ failed specifically to address Warner's opinion that Plaintiff would have a marked limitation in responding appropriately to usual work situations. (Pl.'s Br. at 9.) The Court disagrees. The ALJ addressed Warner's opinion regarding Plaintiff's moderate to marked limitations in all areas of mental functioning, citing the relevant pages of Warner's medical source statement. (Tr. 22.) The ALJ then found that Warner's "opinion is persuasive only for moderate limitations in social functioning[,]" noting that the state agency reviewing psychologists "determined no more than moderate impairments in functioning under B2 and B4" (i.e., interacting with others and adapting or managing oneself) and "[t]hese determinations are more consistent with the overall record."[7] (*Id.*) Thus, the ALJ addressed Warner's recommended marked limitations by finding his opinion persuasive only for moderate limitations, and the ALJ supported the discounting of Warner's opinion with substantial evidence. *See Wigmore v. Colvin*, No. 6:12-cv-0611-ST, 2013 WL 1900621, at *13 (D. Or. Apr. 16, 2013) (holding "it was not legal error [for the ALJ] to fail to specifically include a limitation

---

[7] Plaintiff does not challenge the ALJ's evaluation of the state agency consultants' opinions. (Tr. 22-23.)

regarding [the claimant's] social functioning in the area[] of responding appropriately to usual work situations" and noting that "[t]he ALJ's RFC adequately took into account [the claimant's] social functioning limitations as supported by the record as a whole"), *findings and recommendation adopted,* 2013 WL 1900617 (D. Or. May 7, 2013).

Specifically, the ALJ cited several reasons for finding only moderate limitations in the areas Warner identified, including finding "it reasonable that [Plaintiff] would have limitations in interacting with others based on a longitudinal history of treatment with psychotropic medications" and Plaintiff's testimony that "it is 'almost impossible' to be away from his home . . . because of symptoms of panic." (*Id*.) The ALJ discussed Plaintiff's activities of daily living in finding that the "level of independence in functioning is not consistent with more than moderate limitations." (*Id*.) The ALJ also found that Plaintiff "has not received the level of mental health treatment that would support marked or extreme limitations such as inpatient admission for acute psychiatric care or outpatient partial hospitalization for stabilization of psychiatric symptoms." (*Id*.) Thus, the ALJ's finding that the record supported only moderate limitations, as opposed to the marked limitations Warner identified, was supported by substantial evidence.

Plaintiff also argues that in discounting Warner's opinion, the ALJ "cherry-picked evidence." (*Id*. at 9-10.) Specifically, Plaintiff claims that the ALJ did "not address[] the evidence of medical reports from professionals that reflect issues with anger[.]"[8] (*Id*. at 10.) As previously discussed, the ALJ discussed the objective medical evidence and treatment notes regarding Plaintiff's mental impairments, and further noted that Plaintiff angers easily. (*See, e.g.*,

---

[8] Having already determined that any error in the ALJ's discounting of Jasmine K.'s testimony was harmless, the Court does not address Plaintiff's argument that the ALJ also "improperly cherry-picked" evidence in the "lay testimony evidence." (*Id*.)

PAGE 14 – OPINION AND ORDER

Tr. 19, noting that Plaintiff has a "history of anger issues that have resulted in police involvement in the past.") The ALJ also recognized that Plaintiff was "engaged in treatment for symptoms of panic and PTSD in 2016 and 2017[,]" "was diagnosed with . . . major depressive disorder, agoraphobia, panic disorder, and antisocial personality disorder[,]" and that Plaintiff took medication for anxiety and nightmares. (Tr. 20.) The ALJ highlighted, however, that when Plaintiff requested "a letter for DHS in regard to a workforce exclusion . . . [Plaintiff] noted that he gets along well with others, which is inconsistent with his hearing testimony." (*Id.*; Tr. 357.) Further, the only evidence Plaintiff cites regarding his anger that the ALJ did not discuss is one record from November 2016 (i.e., prior to his amended alleged disability onset date) in which Plaintiff reported "feeling angry" and was "still visibly angry" about his neighbors having a party.[9] (*See* Pl.'s Br. at 10; Tr. 382.) The Court does not agree that the ALJ's failure to cite this one record demonstrates that the ALJ cherry-picked or otherwise ignored material evidence that contradicted his findings.[10] *See generally Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ cannot "cherry-pick" from the record to support their findings while ignoring evidence that contradicts their findings).

For these reasons, the Court finds that the ALJ did not err in evaluating Warner's medical source statement.

---

[9] The other evidence Plaintiff alleges the ALJ omitted relates to his prescriptions for anxiety and agitation, but do not evidence "issues with anger." (*See* Pl.'s Br. at 10, citing Tr. 68 (demonstrating Plaintiff was prescribed medication for "anxiety/agitation[;]"); Tr. 358 (same); Tr. 406 (same).) In any event, the ALJ acknowledged Plaintiff's prescriptions for anxiety and nightmare medications. (Tr. 20, "He report[ed] taking clonidine for anxiety and he is prescribed Prazosin for nightmares.")

[10] A review of the record shows one other mention of "anger issues" but also that Plaintiff's "current regimen of psychotropic medications is working to control signs and symptoms of his disorders." (Tr. 365.)

PAGE 15 – OPINION AND ORDER

**III.    RECORD DEVELOPMENT**

Plaintiff alternatively argues that the ALJ failed fully to develop the record based "on the ALJ's statement that the State agency psychologists gave a 'confusing' limitation on dealing with supervisors" and the ALJ was therefore required to "more fully develop[ the record] by calling on a medical expert." (Pl.'s Br. at 11, citing Tr. 22-23.)

It is well settled that an "ALJ has 'an independent duty to fully and fairly develop the record,' but this duty is triggered only if 'there is ambiguous evidence or . . . the record is inadequate to allow for proper evaluation of the evidence.'" *Harmon v. Saul*, 850 F. App'x 485, 487 (9th Cir. 2021) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) and *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)). If the record includes "specific and sufficient evidence" to evaluate the claim, however, the record is neither ambiguous nor inadequate, and the ALJ does not err by failing to obtain additional records. *See Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021) (rejecting the claimant's argument that the ALJ failed to fully develop the record by not obtaining certain mental health records because "the record provided specific and sufficient evidence, and the record was therefore neither ambiguous nor inadequate"); *Harmon*, 850 F. App'x at 487 (holding that the ALJ did not err by failing to obtain records when "the absence of the . . . records did not make the record ambiguous or inadequate," and noting that the absent records did not prejudice the claimant because it was "unlikely" the records would have benefitted the claimant in the proceedings).

Here, the ALJ did not commit harmful error by failing to call an additional medical expert because the record includes specific and sufficient evidence to allow for proper evaluation of Plaintiff's claim. In noting that "the State agency gave a confusing limitation on dealing with supervisors," the ALJ clearly explained how he interpreted the state agency's proffered limitation:

PAGE 16 – OPINION AND ORDER

> It appears the State agency meant to say [Plaintiff] could respond appropriately with supervisors with occasional contact, which would be consistent with a moderate limitation. Another reading is that [Plaintiff] would only occasionally (1/3 of the time) interact appropriately with a supervisor, but the rest of the time would interact inappropriately (2/3[] of the time), which would be a marked limitation, that neither the State agency psychological consultant nor his treating counselor gave him.

(Tr. 23.) The ALJ concluded that the latter reading—which would result in a marked limitation—"is unpersuasive and not supported by the record." (*Id*.) Thus, the ALJ resolved any ambiguity in the record, and his finding that Plaintiff is moderately limited with respect to supervisor interaction is supported by substantial evidence. The Court therefore concludes that the record was neither ambiguous nor inadequate because it included specific and sufficient evidence to evaluate Plaintiff's claim, as the ALJ acknowledged. Accordingly, the ALJ did not commit reversible error by failing further to develop the record.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 31st day of March, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge